# Frost & Miller, LLP

260 Madison Avenue, 20th Floor
New York, New York 10016
Tel: (646) 597-6277

*VIA ECF*

October 30, 2025

Honorable Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1040
Central Islip, New York 17722

Re: *McCauley v. Camarda, et al.,* Case No. 2:24cv04943 NJC-ST

Dear Judge Choudhury:

We submit this letter on behalf of our client, Anthony Zingarelli, to renew his request for a pre-motion conference. Mr. Zingarelli seeks to file a motion (the "Motion") to dismiss the Amended Complaint (ECF Docket No. 24) pursuant to Fed. Rules of Civ. Pro. 12(b)(2) and (6) of on the grounds that this Court lacks personal jurisdiction over Mr. Zingarelli and the claims set forth in the Amended Complaint against him fail to state a claim for relief (ECF Docket No. 29).

### Background

The Amended Complaint arises out of a securities offering of 9% promissory notes (the "Notes") issued by Defendant Windsor Capital Fund, LLC ("Windsor") (Am. Comp. ¶13). Windsor offered the Notes to investors pursuant to an offering memorandum (the "Offering") (Am. Comp. ¶13). Defendant Windsor Capital Fund Manager, LLC (the "Manager") is the sole manager of Windsor and responsible for making all investment decisions (Am. Comp. ¶14). (Hereinafter Windsor, Manager and Defendants AG Morgan Financial Advisors, LLC, Vince Camarda and James McArthur are collectively referred to as the "AGM Defendants").

When the Amended Complaint was filed, Plaintiff was 68 years old and retired. (Am. Comp. ¶4) Based on her employment history, and with her formal education ending at high school, she was not a sophisticated investor. She also had limited experience in investing or investment matters (Am. Comp. ¶4). Plaintiff accumulated certain assets during her working career, including a $500,000 401-K, $100,000 in certificates of deposit and a home purchased with her sister in which she had net equity of approximately $200,000. (Am. Comp. ¶18) Plaintiff's investment goal was to have sufficient money to cover her costs of living until she was at least 90 years old. (Am. Comp. ¶18)

Plaintiff was introduced to the AGM Defendants by her brother and other family members who had invested with the AGM Defendants (Am. Comp. ¶16). Based on numerous representations made to Plaintiff by the AGM Defendants, including that an investment in the Note Offering would provide her sufficient funds to meet her financial retirement goals and the expected return on her investment she determined to invest $450,000 in the Offering (the "Investment"). (Am. Comp. ¶¶ 19-22)

The Amended Complaint alleges that the representations made by the AGM Defendants

were misleading and false. In addition, the Plaintiff alleges that the AGM Defendants failed to disclose numerous material facts, causing her to proceed with the Investment in the Offering and had she known these omitted facts she would not have made the Investment.

### Motion to Dismiss for Lack of Personal Jurisdiction

The allegations of the Amended Complaint cannot sustain a finding that Zingarelli had sufficient minimum contacts with New York to establish personal jurisdiction. The Amended Complaint mistakenly alleges Zingarelli resides in Philadelphia (Am. Comp. ¶10). He resides in Texas. Plaintiff does not, and cannot, allege that Zingarelli conducted business in New York.

There are no allegations in the Amended Complaint that Zingarelli had any role in preparing or assisting in the preparation or structuring of the Offering, the offering memorandum or any other documents related to the Offering, including the Notes purchased by Plaintiff. There are also no allegations that Zingarelli participated in, promoted, or provided any financial advice regarding the Offering. Unlike the AGM Defendants, Zingarelli did not speak with, correspond or interact with Plaintiff. In fact, he never met the Plaintiff and has no knowledge of her. These facts are confirmed by paragraph 41 of the Amended Complaint which specifically states that she did not have any dealings with Zingarelli.

In view of the lack of any allegations in the Amended Complaint that Zingarelli had anything to do with the Offering, Plaintiff's Investment in that Offering or any contact with Plaintiff, Zingarelli had no contact with the State of New York relating to any acts alleged in the Amended Complaint as to the Offering and Plaintiff's Investment in that Offering. Accordingly, there is no basis for this Court to exercise personal jurisdiction over Zingarelli.

Plaintiff, however, attempts to tie Zingarelli to the AGM Defendants' fraudulent conduct, the Offering and Plaintiff's Investment by alleging that Plaintiff's Investment was transferred to a Texas bank account controlled by Zingarelli and from that account the funds were then transferred by Zingarelli to five separate bank accounts controlled by Defendants Camarda and McArthur located in "five different states" (Am. Comp. ¶60) for the purported purpose of laundering these funds. Plaintiff also alleges that the bulk of her Investment was then transferred to a custodial Trust Account at Meridian Bank in Pennsylvania to be used by the AGM Defendants for payroll (Am. Comp. ¶43). Even if these allegations were true, which they are not, they would still be insufficient to comprise contacts necessary to have this Court exercise personal jurisdiction. The banks in which Zingarelli allegedly received and subsequently transferred Plaintiff's Investment from were not in New York. Likewise, the five banks, each of which was in a different state, that he purportedly transferred the funds to were not in New York. There are also no allegations in the Amended Complaint to support a finding that the Plaintiff's Investment Zingarelli purportedly received, or later allegedly transferred, were in or from accounts in Zingarelli's personal name. In fact, the accounts referred to in the Amended Complaint were not in Zingarelli's name. Rather, they were in the name of a legal entity. There are no allegations in the Amended Complaint that would allow the Court to pierce the veil of that legal entity.

Further, the allegations in the Amended Complaint that Zingarelli received Plaintiff's $450,000 Investment (Am. Comp. ¶47) is contradicted by other allegations. **Plaintiff's Investment in the Offering was never received by Zingarelli.** Statements in the Amended Complaint evidence that Plaintiff's Investment was deposited into accounts controlled by the AGM Defendants, not Zingarelli. For example, paragraph 52 of the Amended Complaint states that Plaintiff's $450,000 Investment was deposited into "a Windsor bank account controlled by

Defendants Camarda and McArthur." Paragraph 60 of the Amended Complaint alleges that Plaintiff's $450,000 "was deposited into a First National Bank LI account controlled by Defendants Camarda and McArthur and then transferred to various accounts in different states controlled by Defendants." Again, Zingarelli did not receive or transfer these funds. Further, as seen, even if he did, it would still not result in Zingarelli having any contacts with New York.

Moreover, once the Plaintiff's funds were deposited in accounts controlled by Defendants Camrada and McArthur they were converted to their use and control. There were several legitimate reasons the Defendants could have transferred funds to Zingarelli having nothing to do with the Offering or Plaintiff's Investment. In fact, funds were loaned to an entity owned by Zingarelli in a legitimate commercial loan transaction. Money is fungible. When funds were transferred to Zingarelli's entity there was no way for Zingarelli to know that any of these funds came from Plaintiff's Investment since Zingarelli did not know who Plaintiff was or of her Investment with the AGM Defendants (Am. Comp. ¶47).

**Motion to Dismiss for Failure to State a Claim for Relief**

Counts 1 and 3 for Securities Fraud and Common Law Fraud[1]

Plaintiff alleges that her purchase of the Windsor Notes was a direct result of several alleged significant misrepresentations and omissions of material facts by the AGM Defendants. Plaintiff claims those misrepresentations and omissions constitute violations of Section 10(b) of the Securities Exchange Act of 1934, 15U.S.C 78j (b) and Rule 10b-5 thereunder, 17C.F.R. §240.10b-5 and common law fraud (Am. Comp. ¶46). Zingarelli did not make any misrepresentations or omissions of material fact to Plaintiff (Am. Comp. ¶41). Therefore, Zingarelli has no liability to Plaintiff for fraud under the aforementioned sections of the Securities Law or for common law fraud.

In an effort to expand these sections of the Securities Laws beyond their permissible scope, Plaintiff alleges that Zingarelli by accepting Plaintiff's $450,000 Investment and thereafter transferring the funds to other bank accounts, purportedly acted in concert with the AGM Defendants to launder Plaintiff's money in furtherance of the fraud committed by the AGM Defendants. (Am. Comp. ¶47). As stated, Zingarelli did not receive Plaintiff's Investment. Her $450,000 Investment was deposited directly into accounts controlled by the AGM Defendants (Am. Comp. ¶¶43, 52 and 60). Zingarelli never received funds directly from Plaintiff. At most, Zingarelli received funds from the AGM Defendants that were in their possession. Because Plaintiff's Investment was deposited with other funds of the AGM Defendants it cannot be said with any certainty that the funds received by Zingarelli came from the Plaintiff's Investment. Further, money transferred by the AGM Defendants to Zingarelli could have been transferred for several legitimate reasons. Finally, there are no specific allegations in the Amended Complaint regarding the alleged fraudulent actions of Zingarelli sufficient to sustain Plaintiff's claim that he acted in concert with the other Defendants to defraud Plaintiff. There are only conclusory allegations. These statements are not sufficient to support a claim for fraud.

Counts Two – Conversion; Count 4 - Unjust Enrichment; and Count 5- Accounting

The common requisite to state a cause of action for each of these Counts of the Amended

_____

[1] The Sixth Count of the Amended Complaint for breach of contract is not brought against Zingarelli and is not applicable to the Motion.

Complaint is that Zingarelli received Plaintiff's Investment in the Offering. Without such receipt he could not convert those funds, be unjustly enriched or be required to account to Plaintiff. As shown, the Amended Complaint alleges that Plaintiff's Investment in the Offering was made to the AGM Defendants. Zingarelli did not receive the Plaintiff's Investment. The only funds he is alleged to have received came from the AGM Defendants after they received Plaintiff's Investment, controlled those funds and converted them to their own use. Accordingly, these Counts fail as a matter of law against Zingarelli.

### Count 7 for Negligence

The Seventh Count of the Amended Complaint seeks damages against the Defendants for their purported negligence in failing to exercise reasonable care in connection with Plaintiff's Investment in the Offering and use of the Investment she entrusted to Defendants (Am. Comp. ¶67). Paragraph 39 of the Amended Complaint sets forth in great detail the duties owed by AGM, Camarda and McArthur to Plaintiff. The Amended Complaint fails to address the issue of Zingarelli's duty of care to Plaintiff since as stated and conceded, Zingarelli had no dealings with Plaintiff regarding the Offering or her Investment. In the absence of such duty of care, Plaintiff's action against Zingarelli for negligence fails and must be dismissed.

### Count 8 for Civil Conspiracy

The Eighth Count asserts a claim against all Defendants for "conspiracy." Under New York and Second Circuit law, civil conspiracy is not recognized as an independent cause of action. Rather, it is a means to connect defendants to an underlying actionable tort. To that end, Plaintiff must plead (1) an agreement between two or more parties, (2) an overt act in furtherance of the agreement, (3) intentional participation in the furtherance of a plan or purpose, and (4) resulting damage or injury in connection with a viable cause of action. Plaintiff instead has asserted a conspiracy claim as a stand-alone cause of action, which must be dismissed with respect to all Defendants. Moreover, pleading such a claim against Zingarelli cannot be sustained since as stated, he did not participate in the AGM Defendants' fraudulent scheme and did not participate in the Offering pursuant to which Plaintiff made her Investment.

### **Compliance with Rule 5.1 – Conferring with Plaintiff's Counsel**

On October 21, 2025, I spoke with my adversary, Timothy J. Dennin, attorney for the Plaintiff, and reviewed the basis of our motions. I explained our legal position, and he discussed Plaintiff's legal position. While he did not agree with our legal position or consent to the relief we were seeking, he did not object to Mr. Zingarelli's right to make the motions.

Subsequently through an exchange of emails, I advised Mr. Dennin of the Court's October 23, 2025 order. We also agreed that Mr. Zingarelli's time to respond to the Amended Complaint would be extended in accordance with the Court's determination of Mr. Zingarelli's request to file the Motion. In the event the Court agreed to the filing of the Motion, the time to respond would be extended to the filing date of the Motion set forth in the briefing schedule. If it was determined that the Motion was not permitted to be filed, Mr. Zingarelli's answer to the Amended Complaint would be extended two weeks from the date of such order.

We thank the Court for its prompt attention to this matter.

Respectfully,

Kenneth N. Miller