**TIMOTHY J. DENNIN, P.C.**
316 MAIN STREET
NORTHPORT, N.Y. 11768
(631) 261-0250

FOR IN CAMERA REVIEW PERSUANT TO CONFIDENTIALITY ORDER

November 12, 2025

**VIA ECF**
Honorable Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: Kathleen McCauley v. Vincent Camarda, James McGarthur et al.
Case No.2:24cv049443 NJC-ST

Dear Judge Choudhury:

I represent the Plaintiff in the above-mentioned matter and write regarding Defendant Anthony Zingarelli's ("Zingarelli") October 30, 2025 second letter to this Court (ECF Dkt No. 31) requesting a conference regarding Zingarelli seeking to dismiss Plaintiff's Amended Complaint (ECF Dkt. No 24) as to claims asserted against Zingarelli. In Zingarelli's most recent request, he wrongly asserts that this Court lacks personal jurisdiction over Zingarelli and that the claims against him fail to state a claim for relief. For the reasons detailed hereafter, these arguments lack merit.

This Court has In-Personam Jurisdiction over Zingarelli

Zingarelli argues that this Court lacks personal jurisdiction because he purportedly "had no contact with the State of New York relating *to any acts* alleged in Amended Complaint as to the Offering and *Plaintiff's Investment* in that Offering". This baseless representation to this Court ignores the detailed allegations in ¶ 43 of the Amended Complaint (ECF Dkt. No 24) that after Plaintiff's $450,000 was transferred into an account controlled by Camarda and McGarthur, it was not invested in anything but immediately transferred to an account at Texas Capital Bank controlled by Zingarelli and then transferred by Zingarelli to five different bank accounts at 1st National Bank of Long Island controlled by Camarda and McGarthur.[1] There is no dispute that the accounts maintained at 1st National Bank, which Zingarelli improperly transferred Plaintiff's $450,000 into, were all located in Long Island New York.[2] Zingarelli not only ignores these well pleaded facts but distorts them falsely representing to this Court that the Amended Complaint alleged Zingarelli transferred Plaintiff's funds to five separate bank accounts located in "five

---

[1] Records received from Texas Capital Bank were produced pursuant to the terms of the April 4, 2025 Confidentiality Order (ECF Dkt. 19) and thus, the instant letter is submitted for *in camera* review.

[2] All the 1st National accounts referenced in the Amended Complaint were located 5200 Merrick Rd, Massapequa, N.Y. 11758.

different states". No where in the Amended Complaint is it alleged that Zingarelli transferred Plaintiff's money into five accounts located in "five different states". In reality, as plainly set forth in ¶ 43 of the Amended Complaint (ECF Dkt. No 24), Plaintiff alleged that Zingarelli transferred her money (as part the money laundering scheme), into five accounts in the names of entities controlled by Camarda and McArthur and all five accounts were located in the 1st National Bank of Long Island.[3] Zingarelli, by improperly transferring Plaintiff's $450,000 nest egg into five different entities (all unrelated to Plaintiff's purported investment in Windsor) with bank accounts located in Long Island, N.Y. unquestionably meets the minimum contacts standard establishing that this Court has personal jurisdiction over Zingarelli.[4]

Although it has nothing to do with personal jurisdiction, Zingarelli argues that money is fungible and that Zingarelli "did not receive or transfer any of these [Plaintiff's] funds". Subpoenaed bank records evidence that without question the source of the $450,000 received and transferred by Zingarelli is Plaintiff.

<u>Zingarelli's other Arguments Lack Merit</u>

In attempting to portray the transfer and misuse of Plaintiff's money as "legitimate", Zingarelli ignores the following specific allegations of the Amended Complaint:

- In a motion filed in an SEC's enforcement action against Par Funding (*SEC v. Complete Business Solutions Group d/b/a Par Funding*, No. 9:20-cv-81205 (S.D. Fla. 2020)), Zingarelli was identified as one of Par Funding's financial backers and the "right hand" man of Joseph Laforte, founder of Par Funding. Laforte is in federal prison awaiting a scheduled trial in December 2024 on criminal conspiracy charges. The Court Appointed Receiver (for the now defunct Par Funding) in a Court filing reportedly alleged that Par Funding operated as a Ponzi Scheme from 2012-2019 defrauding investors out of hundreds of millions of dollars. ¶ 10 (ECF Dkt. No 24).

- According to FINRA, Camarda and McArthur "resigned" from IBN Financial Services, Inc. after allegations arose regarding "unlawfully offering and selling securities in connection with a more than $500 million unregistered fraudulent offering with lending company Complete Business Solutions Group Inc., d/b/a Par Funding. The SEC previously charged Par Funding and others with operating a fraudulent scheme that raised hundreds of millions of dollars from investors nationwide." ¶¶ 7, 9 (ECF Dkt. No 24).

- In the Case of *SEC v. AGM, Camarda and McArthur*, Case No. 2:22-cv-03421-NJC-ST, the SEC alleged that AGM and defendants Camarda and McArthur received more than $7 million in "compensation" from Par Funding (the entity purportedly financially backed by Zingarelli) in connection with the sales of unregistered securities. ¶ 37 (ECF Dkt. No 24).

---

[3] Perplexingly, Zingarelli affirmatively represents that the "five banks" (there was only one - 1st National) "were not in New York". There were five accounts that Zingarelli transferred Plaintiff's $450,000 into and all five accounts were held at one bank in Long Island, New York. ¶ 43 of the Amended Complaint. (ECF Dkt. No 24).

[4] Zingarelli finds fault in that the Amended Complaint alleged that Zingarelli resided in Philadelphia (¶ 10 ECF Dkt. No 24). This information was based upon a copy of Zingarelli's purported driver's license, obtained through bank subpoena, that represented he resided in Philadelphia. However, through diligent efforts of a process server, Zingarelli was located and, after the process server was reportedly assaulted and feared for his life, Zingarelli was ultimately served in Irving Texas. (ECF Dkt. No 27).

. Camarda sent Plaintiff an email dated May 31, 2024, stating that "Anthony" signed the closing documents today and that within thirty days "all of our interest and some of our principal" will be paid. In one of the phone calls in the spring of this year with Plaintiff, her brother, her sister in-law and Camarda, in response to a question by Plaintiff, Camarda identified "Anthony" as Anthony Zingeralli. ¶¶ 34, 35 (ECF Dkt. No 24).

. Like Par Funding, the instant case has all the hallmarks of a Ponzi Scheme where Plaintiff's investment returns are not contingent on any legitimate business but the receipt of additional (new) funds. ¶ 38 (ECF Dkt. No 24).

. Bank records reflect that Plaintiff's $450,000 was not invested in anything but laundered through various bank accounts and converted by Defendants for their own purposes. ¶ 44 (ECF Dkt. No 24).

The allegations in the Amended Complaint, which must be presumed as true and all reasonable inferences drawn in Plaintiff's favor, sufficiently alleges facts demonstrating that Zingarelli, by accepting and transferring Plaintiff's funds in furtherance of a money laundering/Ponzi scheme, acted in concert with the AGM Defendants in furtherance of fraud. These specific allegations demonstrate that Plaintiff's $450,000 was not invested in any legitimate investment but was laundered through various bank accounts controlled by Defendants. There was no legitimate business purpose to these transfers.
In a sworn deposition on August 11, 2025, Camarda acknowledged that he knew Zingarelli but invoked the fifth amendment privilege when asked what Zingarelli's involvement was regarding Plaintiff's $450,000 "investment" as well as Camarda's business relationship with Zingarelli. In sworn depositions taken in this case, Camarda and McArthur invoked the 5th when asked about the transfers of Plaintiff's $450,000, laundering her money through various bank accounts controlled by the Defendants and whether this was all part of a Ponzi scheme.
These allegations sufficiently allege that Zingarelli acted in concert with Camarda and McArthur in furtherance of the fraud. These allegations, which must be presumed as true, support the specific and well-pled securities and common law fraud claims as well as conversion, unjust enrichment and accounting. As bailor of Plaintiff's funds, Zingarelli had a duty to use due care supporting Plaintiff's negligent claims. Further, these specific allegations meet all four elements of a civil conspiracy claim which of course does not stand on its own but is tied to Defendants' fraudulent scheme.
For all the reasons set forth herein, as well as the well-reasoned Order of this Court as set forth during the Conference held August 15, 2025 (recorded *via* Cisco), Zingarelli's request seeking a conference to file a Motion to Dismiss must be denied. To grant this request would only result in wasting precious judicial and counsels' time and resources.

Very truly yours,

*Timothy J. Dennin*
Timothy J. Dennin

TJD/tjs